**Bernard J. TOMAYKO, Appellant,**

**v.**

**BETHEL PARK MUNICIPALITY.**

Commonwealth Court of Pennsylvania.

Argued Nov. 18, 1996.

Decided Jan. 6, 1997.

Ronald P. Koerner, Pittsburgh, for appellant.

Robert L. McTiernan, Pittsburgh, for appellee.

Before FRIEDMAN and KELLEY, JJ., and RODGERS, Senior Judge.

FRIEDMAN, Judge.

Bernard J. Tomayko, a police officer for the Municipality of Bethel Park, appeals from an order of the Court of Common Pleas of Allegheny County (trial court) which dismissed Tomayko's appeal from the decision of the Bethel Park Civil Service Commission (Commission) upholding an eight-day suspension of Tomayko, without pay, for not residing within a radius of five air miles of the police station. The order also required Tomayko to comply with the residency requirement within six months.

Tomayko, who has been a Bethel Park police officer for fifteen years, lived with his family in Bethel Park until September 25, 1991, when they moved to McMurray, Pennsylvania; Tomayko's new residence is approximately seven air miles from the Bethel Park police station.

Since January 1, 1989, the Bethel Park Municipal Code has required that all police officers reside within five air miles of its police station.[1] Although Tomayko was

---

5. Specifically, Section 8(c) of the Third Class County Assessment Law, 72 P.S. § 5349.

1. Municipal Ordinance 7–12–93A, Article II, Section 11.7, entitled "Residency Requirements," provides as follows:

aware of this residency requirement, he was unaware of the distance in an air mile when he moved,[2] and he believed that his new home was within the five mile limit. In fact, Tomayko consulted with fellow officers, who also felt that Tomayko's new home was within the required distance from the police station.[3] Tomayko notified the Chief of Police that he had moved, and the appropriate changes were made in his personnel records to reflect the new residence.

The location of Tomayko's residence first became an issue when a Sergeant position became available on the police force. Tomayko took the test for the position and placed third. At that point, some of Tomayko's fellow officers informed members of Council of Tomayko's new address. The Chief of Police investigated the matter and determined that Tomayko, in fact, lived more than five air miles from the police station. Thereafter, the Chief of Police sent Tomayko a certified letter informing him that he was being suspended for eight ten-hour working days[4] and directing Tomayko to comply with the residency requirement within six months. Tomayko was advised that his discipline, resulting from the violation of the residency requirement, was authorized by subsections (C) and (E) of section 1101 of the Bethel Park Civil Service Rules and Regulations, which permit suspensions for (C) violation of

any written rule, regulation or procedures manual set forth by Chief of Police or Council, and (E) inefficiency, neglect or disobedience of Ordinance. (R.R. at 7a–8a, 124a–25a; Appendix to Appellee's brief at 22–23.)

Tomayko appealed to the Commission which sustained the charges against Tomayko. On further appeal, the trial court accepted that Tomayko's violation of the five air mile requirement was unintentional. However, the trial court concluded that, even if Tomayko believed that his new home was within the five air mile requirement, the residency requirement did not necessitate a specific intent to be in violation thereof. Accordingly, the trial court dismissed Tomayko's appeal.

On appeal to this court,[5] Tomayko argues that the trial court erred in dismissing his appeal because his innocent, unintentional violation of the residency requirement could not form the basis for the disciplinary action taken against him. Rather, Tomayko contends that, in order to sustain the suspension, the Municipality must first present substantial evidence that Tomayko intended to violate the residency requirement.[6] We disagree.

There is nothing in Bethel Park's residency requirement to suggest that a violation must be willful or intentional in order to be

Effective January 1, 1989, all police officers employed by the Municipality of Bethel Park shall reside within a five (5) air mile radius of its Municipal Building/Police Station.
(R.R. at 127a.) This residency requirement is also contained in section 25 of the collective bargaining agreement between Bethel Park and its police officers. (R.R. at 129a, 131a.)

2. An air mile is actually longer than an ordinary mile. An air mile is the equivalent of 6,076.11 feet, whereas an ordinary mile is 5,280 feet.

3. Tomayko also asked a fellow officer if there were any maps that showed the five air mile limit, but was told that no such maps existed.

4. There appears to be some confusion as to whether Tomayko was suspended for eight (8)—ten (10) hour working days or for ten working days; however, the length of the suspension has no impact on this decision.

5. Our scope of review is limited to determining whether constitutional rights have been violated,

an error of law committed, or necessary findings of fact are unsupported by substantial evidence. *Municipality of Penn Hills Civil Service Commission v. Alexander*, 80 Pa.Cmwlth. 23, 470 A.2d 1108 (1984).

6. In support of this argument, Tomayko relies on *Township of Fairview v. Saxe*, 73 Pa.Cmwlth. 161, 457 A.2d 1014 (1983), for the proposition that a municipality bears the burden of proving all charges against an officer by substantial evidence. However, Tomayko's reliance upon that case here is misplaced. In *Saxe*, a police officer was dismissed based on charges relating to false swearing and failure to comply with the compulsory motor vehicle insurance law. On appeal, the court of common pleas reversed and reinstated the officer. We affirmed the reinstatement, agreeing that the record did not contain substantial evidence to prove that the officer committed the acts for which he was dismissed. Here, however, there is no question that Tomayko violated Bethel Park's residency requirement by living more than five air miles from the police station.

grounds for disciplinary action. Indeed, the written rule mandates residency within the set boundaries by clearly stating that all police officers employed by Bethel Park *shall* reside within five air miles of the Bethel Park police station. Further, subsection (C) of section 1101 of the Bethel Park Civil Service Rules and Regulations permits suspension for violation of any written rule of Council, such as the residency requirement here, without considering the intent of the violator.[7]

Although aware of the residency rule and his responsibility to comply with it, Tomayko, unfortunately, did not accurately determine whether his new home was within the permitted distance before moving in. Because Tomayko's home was located outside the five air mile limit permitted for Bethel Park's police officers, the Commission properly determined that Tomayko could be suspended for violating the Bethel Park residency requirement. Accordingly, we affirm the trial court's dismissal of Tomayko's appeal from that suspension.

### ORDER

AND NOW, this 6th day of January, 1997, the order of the Court of Common Pleas of Allegheny County, dated January 11, 1996, is hereby affirmed.

FLAHERTY, J., did not participate in the decision of this case.

---

7. Subsection (E) of these Civil Service Rules, by allowing for suspension based on inefficiency or neglect, clearly does not require scienter. Moreover, subsection (H) of the Civil Service Rules authorizes suspensions based on *willful* misstatement, falsification or concealment on application. The express inclusion of a reference to willfulness in subsection (H), omitted in subsections (C) and (E), indicates that the latter subsections do not require that willfulness be established before a suspension may be imposed under those subsections.